# THE STATE v. HAYDEN WILLIAMS, Appellant.

### Division Two, February 23, 1915.

1. **RAPE: Penetration: Proof: "Ravish."** Where the prosecutrix
in a trial for rape testified that the defendant, while holding
her on the floor, got around in front of her, pulled up her
clothing, and "ravished" her, there is sufficient proof of pene-
tration, the word "ravish" so used necessarily including the act
of penetration.

2. ———: **Evidence: Use of Force.** The evidence in a trial for
rape *held* sufficient to justify the jury in finding that the de-
fendant committed the act forcibly and against the will or con-
sent of the prosecutrix.

Appeal from Pettis Circuit Court.—*Hon. Hopkins B.
Shain,* Judge.

AFFIRMED.

*A. L. Shortridge* and *W. D. Steele* for appellant.

*John T. Barker,* Attorney-General, for the State;
*E. O. Jones* of counsel.

WILLIAMS, C.—Upon an information charging
him with forcibly ravishing the prosecutrix, defendant

Rape.
was tried in the circuit court of Pettis county,
found guilty, and his punishment assessed at
twelve years in the penitentiary.

The evidence upon the part of the State tended
to establish the following facts: The offense occurred
about eleven p. m., January 19, 1914, in the bathroom
of the O. K. Barber Shop in Sedalia, Missouri. Prose-
cutrix, a colored girl, 18 years of age, was employed as
a domestic at the home of William H. Powell, Jr., and
early on the evening in question she left the Powell
home intending to go to the Armory Hall in Sedalia
for the purpose of attending a dancing school con-

ducted for colored people. She intended to have a girl friend accompany her to the dancing school and was on the street going to the home of her friend when she met the defendant, a colored man 28 years old. Defendant offered to accompany her to the dance hall and prosecutrix accepted the invitation. They arrived at the dance hall before the crowd had assembled. Defendant suggested that they take a walk. They started for a walk and stopped at a restaurant where defendant drank a bottle of beer and prosecutrix drank a Manhattan cocktail. They remained at the restaurant for about 15 minutes and then returned to the dance hall where they remained until about ten o'clock. At the dance hall defendant was very attentive to prosecutrix, teaching her to dance.

When the time came for departing, defendant suggested that he and a young boy, who lived with him, be permitted to take the prosecutrix home. Prosecutrix consented to this arrangement and the three left the dance hall together.

On their way they stopped in front of the O. K. Barber Shop, the place where defendant was employed as porter. Defendant stating that he desired to stop for a moment, unlocked the door and went into the barber shop. In a short time he returned to the door and invited prosecutrix and the boy to come inside and wait for him. This invitation was accepted. The defendant and the boy stepped to one side in the barber shop and the boy then left the shop and in a short time returned with two bottles of beer. The defendant took the beer from the boy at the door of the shop and told him that he could go back to the dance hall. The boy then departed.

Defendant thereupon locked the front door of the shop and asked prosecutrix to drink some beer. Prosecutrix refused and told the defendant that she had promised to be home early that evening and demanded that he take her home. Thereupon defendant

forcibly pushed prosecutrix into the bathroom. In the bathroom defendant took hold of prosecutrix's hands and began to tell her how much he liked her. She tried to free herself from his hold but was unable to do so. He continued to talk to her and she said he "insulted" her and that she refused his request. Defendant then stood between prosecutrix and the door to the bathroom and took off his coat and trousers and took a towel from his coat pocket. Prosecutrix thought defendant was going to chloroform her. All this time prosecutrix was crying and begging defendant to take her home and trying to free herself from his presence. She became frightened and fell on her knees. Defendant then put his overcoat on the floor and again "insulted" her and she refused. Defendant then placed his hand upon prosecutrix's shoulders and pulled her backwards upon the floor and while holding her in this position, got around in front of her, raised up her clothing and "ravished" her. Prosecutrix testified that she was "crying as loud as she could" all this time and striking defendant and doing all she could to resist him.

After this occurrence, prosecutrix indicated her intention to go home and defendant told her that if she went home at that time of night the people for whom she worked would "fire" her and suggested that since defendant's wife was not at home she go to his house and stay all night with him. This she refused to do. Defendant then opened the front door of the barber shop and prosecutrix stepped out on the street and started home. Defendant followed, holding her by her arm, trying to persuade her to go home with him. About this time they passed, on the street, Major James and Lieutenant Collins, officers of the State militia. These two witnesses noticed that prosecutrix was crying and that defendant and prosecutrix were having trouble. The prosecutrix jerked away from the defendant and rushed up and grabbed the

arm of Lieutenant Collins. Defendant came up and pulled her away from Collins and she thereupon tried to grab the arm of Major James. The witnesses asked her what was the trouble. Prosecutrix was crying and told them that she wanted to go home. The prosecutrix then ran away from defendant and entered Snyder's Confectionery Store where she called up the Powell residence, stating over the telephone that a man had mistreated her and that she was afraid to come home alone. The defendant followed her into the confectionery store and tried to quiet her but being unsuccessful, he left the store. A few minutes later, four small white boys accompanied prosecutrix to the Powell home and upon arriving at the Powell home between eleven and twelve o'clock p. m., prosecutrix was crying and in reply to a question stated that she had been "ruined."

The underclothing worn by prosecutrix on the night in question and also a sheet from the bed on which prosecutrix slept the remainder of the night were soiled with blood stains. It was further shown that this was not the prosecutrix's menstrual period. The underwear and sheet were introduced in evidence. Prosecutrix further testified that the treatment given her by defendant caused her severe pain. Prosecutrix testified that she had taught one term of school about a year prior to this alleged offense.

The evidence upon the part of the defendant tended to establish the following facts: Defendant denied that he had sexual intercourse with the prosecutrix at any time. That on the evening in question the prosecutrix telephoned him to meet her and take her to the dance, and that upon arriving at the dance hall prosecutrix suggested that they go to the restaurant and get something to drink and that later upon their return prosecutrix suggested that they get some beer at the barber shop. That when they reached the barber shop, the defendant noticed a Kansas City pa-

per laying in front of the door and (because they had been losing the paper) unlocked the door to place the paper inside. Prosecutrix suggested that they get some beer and he sent the boy after some beer and whiskey and that he went to a store to get some chewing gum.

Defendant and the boy returned to the barber shop and the three remained together in the barber shop all the time that the prosecutrix was there. That the prosecutrix drank the two bottles of beer and some of the whiskey and that she became intoxicated and that her action on the street afterwards was due to the intoxication. Defendant was arrrested .and charged with the crime the following day. The boy corroborated the testimony of the defendant and stated that he was present at the barber shop during all the time that the prosecutrix was there and that when the defendant stepped out on the street to get the chewing gum, prosecutrix asked the boy for a towel and that he gave her a towel and she retired to the bathroom and later came out into the barber shop where she drank the beer and some of the whiskey. When the three left the barber shop the boy returned to the dance hall and he stated that in a short time thereafter the defendant came back to the dance hall.

Defendant offered evidence tending to show that the reputation of the prosecutrix for virtue and chastity and truth and veracity was bad. In rebuttal the State offered evidence tending to prove that the reputation of the prosecutrix in that behalf was good. The State offered evidence tending to show that the defendant had been convicted several times of various misdemeanors. Major James and Lieutenant Collins said that prosecutrix did not appear to be drunk at the time they saw her on the street having trouble with the defendant.

The only point urged as a ground for reversal by appellant is that the evidence is insufficient to sup-

port the verdict. In this behalf it is insisted (1) that penetration was not proven; and (2) that the proof shows only a reluctant consent and fails to show that the act was accomplished by force as contemplated by the statute. These will be discussed in their order.

I. Concerning the first proposition the testimony of prosecutrix was that after she refused his request (which she denominates as an "insult"),

**Evidence: Penetration.** defendant forced her to assume a position on her back upon the floor of the bathroom and while holding her down in that position, got around in front of her, pulled up her clothing and "ravished" her. The word ravish is the word used in the statute defining the crime. The word is one of plain English and has a well defined meaning. Webster's definition of the word ravish, in the sense here used, is "to have carnal knowledge of [a woman] by force and against her consent; to rape." The term carnal knowledge is synonymous with the term sexual intercourse. [Webster's New International Dictionary, title, "carnal."] It therefore follows that the word "ravished" when used with the context shown by the testimony must necessarily include the act of penetration. The word "intercourse" when used with like context was held by this court to be sufficient proof of penetration. [State v. Devorss, 221 Mo. 469, l. c. 476.] This point is ruled against appellant.

II. Concerning the second proposition, prosecutrix testified that defendant shoved her into the bathroom after he had locked the front door

**Use of Force.** of the barber shop. In the bathroom he "insulted" her and she refused him. He then took a towel out of his pocket and she was "scared to death," thinking he intended to chloroform her. She was crying as "loud as she could" and begging him to let her go home. He stood between her and the bathroom

door and took off his coat and trousers and then pulled her down on to the floor on her back in which position he held her while he pulled up her clothing and ravished her. During all this time she resisted him all she could by striking him in the face and by trying to push him away; that he held her on the floor and she was unable to get away from him. The evidence further shows that immediately after the occurrence she was seen crying on the street, trying to free herself from the hold of defendant; that as soon as she freed herself she hastened to a telephone in a nearby store and called up the Powell home and informed them that she had been "mistreated" by a man and was afraid to go home alone. A few minutes later four small boys escorted her home. Upon her arrival there she was crying and in answer to an inquiry said she had been "ruined."

The above evidence was certainly sufficient to justify the jury in finding that defendant committed the act forcibly and against the will or consent of the prosecutrix.

Finding no error in the record it follows that the judgment must be affirmed. It is so ordered. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.