15574

CULBREATH v. INVESTORS SYNDICATE *ET AL.*

(26 S. E. (2d), 809)·

214

April, 1942.

*Messrs. Williams & Busbee,* of Aiken, S. C., Counsel for Appellant,

*Messrs. Hendersons & Salley*, of Aiken, S. C., Counsel for Respondents,

August 26, 1943.

MR. ASSOCIATE JUSTICE BAKER delivered the unanimous opinion of the Court:

The appellant brought this action against the respondents, Investors Syndicate and King Murphy, the latter a divisional manager of Investors Syndicate, for fraud and deceit in the sale of the stock of Investors Syndicate to the appellant at $40.00 per share. The exceptions relate to the action of the trial Judge in excluding certain testimony proffered on behalf of the appellant, and in granting motions for a nonsuit at the close of appellant's case as to each of the respondents.

The Investors Syndicate, which hereinafter will be referred to as the corporation, is chartered under the laws of Minnesota, and qualified to do business in South Carolina. Its business is that of selling so-called "installment certificates", the principal characteristics of which are that the purchasers of the certificates pay to the corporation a stated sum of money each month over a given period of years, at the expiration of which the certificates mature for sums representing the accumulated payments plus (presumably) accrued interest at the agreed rate. Upon maturity the certificates are payable in a lump sum or in annual installments under an annuity plan therein set forth.

The respondent, King Murphy, was the manager of a district office of the corporation situate in Georgia. One George Brown was the agent of the corporation, serving under the direction of Murphy.

Prior to the time hereinafter mentioned, the appellant had purchased or subscribed to a substantial amount of installment certificates of the corporation. These transactions were handled with Brown, who at times was accompanied by Murphy. Until a short time prior to the making of the transaction involved in the present cause, there had been no discussions with appellant about the purchase of any of the stock of the corporation, nor had either Brown or Murphy held themselves out as being authorized or employed to sell such stock.

The testimony of the appellant tended to show that early in the summer of 1938 representations were made to him

by Brown about the stock of the corporation. Brown told the appellant that the stock was valuable; that the corporation was making a great deal of money; that while the stock wasn't listed on any market, it was a good investment; and that Murphy had a friend or someone he knew around Atlanta, Ga., who held some of the stock and because of illness wanted to get his money out of it. It was further stated to the appellant by Brown that if he was interested in purchasing the stock the matter might be arranged.

The appellant testified that he told Brown that he didn't know anything about the stock or its value, and that he expressed himself as preferring to confine his transactions to the purchase of the corporation's certificates. For the time being the matter was then dropped. Thereafter, according to appellant, Brown and Murphy called on him together. Murphy discussed the stock during that visit and perused a memorandum book, which he also exhibited to the appellant, and which he stated showed that he (Murphy) owned some of the stock and had made "an astounding profit in it." Murphy's "selling talk" led the appellant to believe that he was a man of very considerable means, and was fully advised as to the value of the stock, and was honest in his representation that he desired the appellant to purchase it because of the money the appellant could make out of it. According to the appellant, Murphy repeated the representation of Brown that the stock that was available for sale was stock that Murphy was in a position to pick up from a man who had to liquidate it, and further stated to appellant that if it were not for such a circumstance, the stock probably would not have been available for purchase.

Appellant further testified that Murphy as well as Brown stated that the stock was "by far a better investment than by putting money in the certificates" as appellant was doing.

As the result of these discussions appellant was induced to agree to purchase fifty shares of the stock at $40.00 a share. He paid $200.00 on account, giving his note for the balance.

Later in the same year the appellant asked Murphy to relieve him of the purchase to the extent of twenty-five shares. This was arranged. Appellant later asked Murphy to let him out of the purchase of the remaining twenty-five shares, but Murphy reclined to do this.

In December of the same year the appellant, needing money, sold to one, Risher, the twenty-five shares of the corporation's stock acquired by him as aforesaid, obtaining $40.00 a share for it. The sale was apparently effected with the aid of Brown.

About a year later Risher needed to raise some money, and the testimony tends to show that in the course of his efforts to do so he learned through certain financial channels that the value, or at least the selling value, of the stock was only a fraction of the $40.00 per share which he had paid the appellant for it. He thereupon took the matter up with appellant, asking that the transaction be rescinded.

The appellant testified that in selling the stock to Risher he had made the same representations to Risher that had been made to him by Brown and Murphy, and that being convinced by what Risher told him, and what he learned as the result of his own inquiries, that the representations in question were untrue, he bought the stock back from Risher at $40.00 per share, paying part of the amount in cash, and obligating himself to pay the balance.

There isn't a particle of testimony in the case tending to show that in the transaction of appellant with Murphy and Brown, either Murphy or Brown claimed to or did represent the corporation. The evidence is that the stock sold to the appellant was not sold for the corporation, that it was not treasury stock, and that the corporation had no knowledge of the transaction. The certificates of stock that were introduced in evidence show on their face that the stock which appellant acquired was registered on the books of the corporation in the name of Murphy.

Not only is there no testimony pointing to any interest on the part of the corporation in the transaction in question,

but on the contrary there is testimony to the effect that the transaction was made against the interests of the corporation. The business of the corporation was that of selling its installment certificates. In the present situation Murphy and Brown, according to appellant's testimony, advised him to invest in the stock of the corporation rather than increase his investments in the installment certificates.

There is no foundation for an inference, such as appellant contends the trial Judge should have given the jury an opportunity to draw, that Murphy in his capacity as divisional manager had the power and authority to deal in the stock of the corporation, and to subject the corporation to liability in regard thereto. The agency of Murphy, and all the more so, the agency of Brown, is shown by the testimony to have related to the sale of installment certificates alone. There could be no more reason for extending such an agency by implication to the sale of stock of the corporation than there would be for extending the agency of a general agent of a life or fire insurance company to the sale of the stock of such company.

But it is an equally controlling fact, as hereinbefore set forth, that the uncontradicted evidence discloses that the stock in question was not sold to the appellant for the account of the corporation and there is no evidence that the corporation had any interest in the stock or in the proceeds of sale thereof.

With reference to the liability of the respondent Murphy, the propriety of the nonsuit is to be tested by the settled rules defining the elements of an action for fraud and deceit. In the case of *Flowers v. Price,* 190 S. C., 392, 3 S. E. (2d), 38, 39, these elements are stated to consist of: "(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) his intent that it should be acted upon by the person; (6) the hearer's ignorance of its falsity; (7) His reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury."

Hence the problem for determination is whether the appellant's testimony, taken as true, affords a basis upon which a jury could properly find support for each of the elements of an action for fraud and deceit as above defined. And if all of such elements are found from the testimony, it would still be necessary, to entitle the appellant to go to a jury, to find that his evidence furnishes the measure of his loss which governs the amount of a recovery in cases of the present character. This measure is either the difference between the value of the stock and the value it was represented to have, or the difference between the contract price and the actual value. See Annotations, 57 A. L. R., 1153, 108 A. L. R., 1060.

Turning to the evidence to see whether the elements of an action for fraud and deceit and the measure of the appellant's loss were proved, we find the following:

There was a misrepresentation respecting the ownership of the stock. We think this misrepresentation was material, because if the appellant had been advised that Murphy was making the sale on his own account instead of (as he represented) for the account of some other person who was under the necessity of selling the same, that might have put a different light on the transaction in the mind of appellant. The latter relied on Murphy's honesty and judgment, believing that Murphy had no personal interest in the situation, but on the other hand was seeking to promote the interest of the appellant.

There was a further misrepresentation in respect to the assertion of Murphy that the corporation was a closed corporation. At least, considering the confidence placed by the appellant in Murphy, and the general lay signification attached to the expression "closed corporation," it is a reasonable inference that the appellant was influenced in accepting the representation of Murphy as to the soundness of the price asked for the stock, by the stated fact that the total number of stockholders was very small, and the total amount of stock not more than that which usually

would be held by a few stockholders. The 1940 report of the corporation to its stockholders which was excluded by the lower Court, and the admissibility of which is discussed *infra,* discloses that in 1938 and subsequent years the corporation had over 200,000 shares of stock outstanding. Coupled with all of the other facts and circumstances in the case, we feel that the representation as to the corporation being a closed corporation may reasonably have been found by the jury to have been both false and material, assuming the admissibility of the testimony on the subject.

Again assuming the admissibility of the proffered testimony, the valuation placed on the stock appears to have been grossly overstated. On the basis of the 1940 report to stockholders of the corporation the book value of the stock in 1940 was in the neighborhood of $12.00 per share. The same report gives sufficient statistical and financial data about the operations of the corporation during the years 1938, 1939, and 1940 to indicate that in 1938 the stock had no greater book value. And since we do not think that the burden was on the appellant to offer testimony on the subject of the possibility that there were no elements of value in the stock which prevented it from having a value over three times as great as the book value, we conclude that here too there is sufficient testimony to show both the falsity and materiality of the representation as to value.

The matters thus reviewed, taken in consideration with all of·the testimony adduced, encompass all of the elements of an action for fraud and deceit as defined in *Flowers v. Price, supra,* and leave us only with the question whether the evidence adduced and rejected by the lower Court was admissible, and whether in all the evidence there was a foundation upon which the recoverable damage of the appellant could be computed.

Certain letters addressed by the Investors Syndicate to one of the counsel for appellant were offered in evidence to show certain material facts respecting

the history of the sales of stock by the corporation, the earnings of the corporation, and other pertinent data. They were written in 1941 by way of reply to inquiries on the part of appellant's counsel. These letters were in our opinion clearly inadmissible. Their submission to the jury would have subjected Murphy to a possible verdict against him on the strength of the information contained in the letters without any opportunity on his part to examine the writers of the letters, and to have these letters explained in the light of the financial facts which existed in 1938, when the transaction now in question occurred. These letters are hearsay testimony and come within none of the exceptions to the hearsay rule.

In our opinion, however, the report of the corporation to its stockholders dated February 15, 1941, covering the financial affairs of the corporation, as of December 31, 1940, was admissible. It was proffered in evidence with the testimony of one of appellant's attorneys that he had received the same from the corporation along with a letter of the president of the corporation exhibited by him. This report purports to deal with the financial condition of the corporation during the years 1938, 1939, and 1940. It bears the inscription: "47th Annual Report to Stockholders." It sets forth that the Investors Syndicate was established in 1894, from which it is inferable that the corporation has been in the habit of making reports to its stockholders covering each year of its operations since its organization. Admittedly Murphy was one of the stockholders and it is a reasonable inference that he received the report each year during which he owned stock in the corporation. While the record fails to disclose the period during which Murphy owned stock in the corporation, the fact that he represented to appellant that he possessed full knowledge of the value of the stock, coupled with the fact that in 1938 he admittedly was a stockholder and had been divisional manager of the corporation for several years, is sufficient to create an inference that he did in fact know what the

publications of the corporation disclosed as to the value of its stock.

The authenticity of the report now in question is sufficiently inferable from the testimony of appellant's counsel as to the source from which and the conditions under which he received it.

Of course, the admission of this testimony concludes no one. The respondent Murphy, upon the trial of the cause, would have every opportunity to rebut each of the material inferences which we hold above may properly be drawn from the facts above related. We are here dealing only with the right of the appellant to get before the Court what purports to be the corporation's own statement as to its financial condition.

"Where there is no regular market for a commodity, a wide range of investigation is permitted in determining its market value, and the rules relating to the admission of evidence are liberally constructed. Hearsay of a concurrent or composite type is necessarily admitted, but it is otherwise as to the statement of a particular person, not a witness, on the subject of market value. * * *." 22 C. J., page 187.

"* * * but where corporate stock has no market value, as where it is not listed or actively traded in on any stock exchange, evidence of the worth of the corporation is admissible to prove the value of the stock. For such purpose, all evidence of matters relevant to the value of the corporation is admissible. * * *" 31 C. J. S., Evidence, § 183, page 902.

Other testimony offered on behalf of the appellant to show the alleged fraud practiced upon him stands upon an entirely different footing. We do not think that there was error on the part of the Circuit Judge in rejecting proffered testimony by a banker and business man as to the extent of inquiries made by him as to the value of the stock, and as to the competence of a named bank at

which inquiries were made to give an opinion on the value of the stock. Such testimony, especially in relation to a stock which is not listed on any exchange, or traded in generally as an unlisted stock, would not in our opinion furnish a relevant basis for reaching any conclusion on any of the matters in issue.

While we recognize that the testimony above related respecting the value of the stock in question is meager and dangerously near the borderline of hearsay testimony, we feel that it was sufficient to put the respondent Murphy on proof of his defenses, and that the rejection of the 1940 report to stockholders was error.

The judgment appealed from is affirmed as to the respondent, Investors Syndicate, and reversed and remanded for a new trial as to the respondent, King Murphy.

MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGES T. S. SEASE and E. H. HENDERSON, ACTING ASSOCIATE JUSTICES, concur.