18586

The STATE, Respondent, v. James Esther THOMAS, Appellant

(151 S. E. (2d) 855)

574

*Messrs. W. T. Bolt* and *W. Paul Culbertson,* of Laurens, and *Tench P. Owens,* of Clinton, *for Appellant,* 

*William T. Jones, Esq., Solicitor,* of Greenwood, *for Respondent,* 

December 12, 1966.

BUSSEY, Justice.

The appellant, Thomas, was convicted of the crime of rape and sentenced to death in the General Sessions Court of Laurens County on the 17th day of February, 1965. At the trial appellant was represented by three experienced attorneys.

No evidence having been offered on behalf of the appellant, the facts are stated from the uncontradicted evidence offered by the State. Appellant is an adult married man who lived in the same rural area of Laurens County as did the prosecutrix, and had been personally known to the prosecutrix for approximately four years prior to the date of the crime,

which was September 19, 1964. Prosecutrix was a maiden lady, then sixty-four years of age, who lived by herself at the home where she was reared, located about one mile from a public highway, ingress thereto being by a private road. She had been employed by the Greenwood Manufacturing Company, engaged in the manufacture of women's apparel, for twenty-seven years, and prior to that time had worked for five years in a lunch room.

On the night of September 18, 1964, she retired with a sick headache at about 10:15 P. M., but had been unable to go to sleep, and shortly after midnight she heard noises and soon realized that an intruder was in her house and that he was within about five feet of her bed, whereupon she started to get up and asked, "Who in the world is this in my house at this time of night?" In response thereto the appellant said, "It's me, and I have come to kill you. I have planned it every single day since you put me on the chain-gang for stealing your watch."

Contemporaneously with such statement appellant started beating the prosecutrix, hitting her in the head and knocking her back on the bed. The prosecutrix struggled to get up, in the course of which she was choked and hit on her right arm with an iron rod of some kind which fell to the floor. The blow to prosecutrix' right arm rendered it completely useless to her. Appellant then took off his shirt, tied her hands behind her back, removed her pajama bottoms, and proceeded to rape her on the floor, during which prosecutrix screamed and hollered.

After raping the prosecutrix, appellant tore out the telephone, and managed to find prosecutrix' purse which he emptied on the bed, taking from the contents thereof money and a key case containing prosecutrix' car keys and driver's license. Appellant also located some pennies which prosecutrix was collecting and took the same.

No lights were turned on in the home of the prosecutrix but appellant struck several matches while in the house

which enabled the prosecutrix to see him on several occasions and identify him by sight, although she already knew his identity from his several statements made in the course of the commission of the outrage.

At some time following the rape, prosecutrix became unconscious for a brief period, and during this interval appellant put her pajama bottoms back on her. After she regained consciousness, he dragged her out of the house to her car and en route showed her the window through which he had gained entrance to the home. After pushing prosecutrix into her car, appellant drove the same to an area near Lake Greenwood with the avowed purpose of drowning her. Appellant, however, did not actually attempt to drown her. He evidently vacillated as to just what he should do with her, stopped her car at three different places, and repeatedly threatened to kill her in different ways. In the course of the automobile journey, he further struck and choked her.

At the last stop appellant made he apparently got scared. Three cars passed by and prosecutrix told him that a nephew was to come for her at 3 o'clock, and that he would be out looking for her and that appellant would be killed, too. In any event, the appellant decided to untie her hands and release her, telling her, "You go straight home and I'm going to follow you home. If you don't go home, I'm going to kill you. If you come out of that road before nine o'clock in the morning, be somebody else waiting to kill you and by that time I'll be gone. I'm going to get your sister. I meant to get her first." Prosecutrix promised him that she would go home before he untied her.

Instead of going directly home, prosecutrix drove to the nearest place where she thought she could readily get help, the home of Mr. J. R. Neel, arriving there at approximately 4 A. M. Mr. Neel contacted one of his neighbors who then took prosecutrix to Self Memorial Hospital in Greenwood. Sheriff R. Eugene Johnson of Laurens County was promptly notified, he receiving the call at 4:22 A. M.

The prosecutrix was examined at the hospital by her regular physician, Dr. A. E. Adams, at about 6:20 A. M. His examination disclosed the following injuries: numerous severe bruises and swollen areas over the scalp; a blackish blue bruised area over the forehead at the midline; both right eyelids were markedly swollen; her right ear was black and blue with a bruised area from hemorrhage; scratches and dark areas on her neck; a broken nose; bruises over the front of her chest; and her right shoulder was black and blue over its entire area extending down to just below the elbow on the right arm. The prosecutrix was in a highly disturbed emotional state and was weeping. In addition to the foregoing, Dr. Adams testified as follows:

"There were several bruises, apparently so, over the front of the abdominal area. The patient's vaginal area was examined. There were several areas of abrasions—that is, small breaks in the skin—at the vaginal opening. A speculum was inserted in the vagina. A speculum is an instrument that opens the vagina, that allows us to see inside. A small amount of mucoid like, grayish, whitish material was present. By means of a small glass tube known as a pipette a quantity of this material was drawn from the patient's vagina. Both legs, mainly the right, showed evidence of having been bruised."

The specimen taken by Dr. Adams from prosecutrix' vagina was examined by Drs. May and McGruder, pathologists at the Self Memorial Hospital in Greenwood, and Dr. Adams, without objection, in the course of his testimony read into the record the following report from Dr. May,

"Dear Dr. Adams: Our records indicate that at approximately 6:20 A. M. on September 19th, 1964, we received a small amount of bloody fluid obtained from the vagina of Miss Willie Jones. Preparation of this material revealed the presence of many motile spermatozoa and many red blood cells. These preparations were viewed and confirmed by both Dr. McGruder and me. Sincerely yours, Hunter W. May, M.D., Pathologist."

Dr. Adams was of the opinion that the prosecutrix was a maiden lady who had not had sexual relations with any man prior to her being raped. He had found it necessary to do a hysterectomy on prosecutrix some years previously, at which time her hymen was still intact, until ruptured in the course of the examination with reference to the hysterectomy.

Sheriff Johnson was called by Mr. Neel and proceeded to a store near the home of Mr. Neel where he was joined by a deputy sheriff whom he had called, and later by a SLED agent. As a result of information received by the sheriff, he and other law officers promptly commenced to search for the appellant and went to several residences, including that of appellant, looking for him without success. He finally located appellant at about 7:40 A. M. in a bedroom in the home of appellant's father-in-law, where he was in the act of changing his clothes. The officers took appellant into custody and took his clothes which he was in the process of removing, which consisted of overalls, shirt and shorts, which were wet, it having been misting rain for some time before. In the course of the arrest, appellant gave to the sheriff a five dollar bill.

The appellant was then taken to the detention offices of the Greenwood County jail, where, at approximately 8:40 A. M., the sheriff obtained from the appellant two ten dollar bills, twenty-seven pennies and the key case containing the car keys and drivers license belonging to the prosecutrix. In the automobile of the prosecutrix the law officers found a man's jacket and a combination tire tool and lug wrench, which inferentially was the weapon referred to by the prosecutrix as an iron rod. All of the foregoing items obtained from the appellant and the items found in the automobile of prosecutrix were offered in evidence, without objection. Also introduced in evidence were the pajama bottoms worn by the prosecutrix on the night of the attack. There was blood on the same, as well as on the shorts worn by appellant.

580

This being a capital case, the *in favorem vitae* rule requires us to search the entire record for any prejudicial error affecting any substantial right of the appellant, regardless of whether made the basis of an exception here, in addition to considering the questions raised by the exceptions.

Appellant's first contention is that the verdict of guilty was contrary to the weight of the evidence in that there was no clear and positive evidence of penetration, a necessary element of the crime of rape. The argument in support of this contention is predicated to some extent on the contention that since this is a death case, the court should exclude from consideration, as hearsay evidence, the pathologist's report hereinabove referred to, even though there was no objection to its introduction. It is argued, however, that even considering the pathologist's report, there is still insufficient evidence of penetration.

When all of the evidence, with reference to penetration, including the report of the pathologist, is considered, there can be no question but that penetration was conclusively proved. Even though this is a capital case, it was incumbent upon the appellant to object to the introduction of the report of the pathologist or to request the trial judge to strike out the same and instruct the jury to disregard it. A defendant may not reserve vices in his trial of which he has notice, taking his chances of a favorable verdict, and, in the case of disappointment, use the error to obtain relief. *State v. Robinson,* 238 S. C. 140, 119 S. E. (2d) 671.

Independently of the foregoing, we think the evidence is quite sufficient to clearly establish the essential element of penetration without the aid of the report. The doctor's testimony as to the previous virginity of the prosecutrix, the blood and abraisions at the vaginal opening, and the mucoid like, grayish, whitish material withdrawn from the patient's vagina, when considered in connection

with the testimony of the prosecutrix, could carry to the minds of the jurors no other inference than that penetration was in fact accomplished.

As pointed out by the appellant, the only testimony of the prosecutrix going to the specific fact of penetration was her testimony that he "raped" her. In the case of *State v. Moorer*, 241 S. C. 487, 129 S. E. (2d) 330, the court stated,

"In a prosecution for rape, carnal knowledge is a material element which must be proved beyond a reasonable doubt by the State. Carnal knowledge is completed by penetration, however slight. *State v. Miller*, 211 S. C. 306, 45 S. E. (2d) 23; *State v. Wyatt*, 221 S. C. 407, 70 S. E. (2d) 635; *State v. Worthy*, 239 S. C. 449, 123 S. E. (2d) 835. 'In order to sustain a conviction in a prosecution for rape the evidence must be sufficient to establish the fact of penetration beyond a reasonable doubt. Proof of penetration need not be in any particular form of words; * * *' 75 C. J. S. Rape § 71, p. 547; and use of the terms 'raped' or 'ravished' were held sufficient to warrant a finding of penetration in *State v. Bowman*, 232 N. C. 374, 61 S. E. (2d) 107; *Shorey v. State*, 227 Md. 385, 177 A. (2d) 245; *State v. Worthy*, 239 S. C. 449, 123 S. E. (2d) 835; *King v. Commonwealth*, 165 Va. 843, 183 S. E. 187; *State v. Williams*, 263 Mo. 603, 173 S. W. 1051; *State v. Wilkins*, Mo., 100 S. W. (2d) 889.

"The words 'rape' and 'ravish' are synonymous terms, *State v. Berry*, 361 Mo. 904, 237 S. W. (2d) 91, of wide usage and plain English which have a well defined meaning. Webster's dictionary defines the word 'rape' in the sense used here as 'illicit sexual intercourse without the consent of the woman and effected by force, duress, intimidation, or deception as to the nature of the act' and the word 'ravish' as 'to commit rape upon a woman.' "

In the cited case the court stated that, "The record suggests no doubt that the prosecutrix knew the meaning of

the term used * * *." Appellant attempts to distinguish the *Moorer* case on the ground that the prosecuting witness there was a married woman and the wife of a physician whereas the prosecuting witness here is a maiden lady living in an isolated area of Laurens County. Overlooked is the fact that she was sixty-four years of age and had been daily coming in contact with her co-employees for a period of thirty-two years. True, she was a maiden lady, having stayed single and at home to take care of her parents during the latter years of their lives. She had, however, three sisters, all of whom married. Under all of the evidence in the record, we think there is here no doubt whatever that the prosecutrix knew the ordinary, plain and well known meaning of the term which she used. In brief, had the pathologist's report not even been offered, the evidence here, we think, could have left no reasonable doubt in the minds of the jurors that penetration had, in fact, been accomplished.

Appellant next contends that it was error to admit, over objection, evidence as to crimes committed by appellant both subsequent and prior to the crime for which he was being tried. The prior crime referred to was the stealing of prosecutrix' watch by appellant some four years prior to the rape. The evidence of subsequent crimes complained of included beating and choking prosecutrix, kidnapping her and holding her against her will after the rape was accomplished.

Ordinarily, in a criminal prosecution evidence of the ■■ commission of another, independent crime is not admissible against the defendant if he objects. But, there are well established exceptions to the rule which have been repeatedly set out by this court in the following language:

"Generally speaking, evidence of other crime is competent to prove the specific crime charged when it tends to establish, (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing

the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial."

See *State v. Gregory,* 191 S. C. 212, 4 S. E. (2d) 1; *State v. Lyle,* 125 S. C. 406, 118 S. E. 803; *State v. Bullock,* 235 S. C. 356, 111 S. E. (2d) 657; *State v. Brooks,* 235 S. C. 344, 111 S. E. (2d) 686.

In the last cited case the court quoted with approval from *State v. Weldon,* 39 S. C. 318, 17 S. E. 688, 24 L. R. A. 126, the following language:

"Where the evidence tends to show that the series of offences are so connected together as practically to constitute a continuous transaction, then it is competent to receive evidence of such continuous offences."

We think that all of the evidence here, which only incidentally tended to prove the commission of other crimes, by appellant is governed by exceptions to the general rule, and that such was, therefore, admissible. Appellant's plea of not guilty, of course, put upon the State the burden of proving every element of the crime beyond a reasonable doubt. The evidence with respect to the prior crime, the theft of prosecutrix' watch, was restricted to the minimum requirements of the case and tended directly and fairly to prove not only the identity of the appellant, but his motive as well.

The evidence which incidentally tended to prove the appellant guilty of other crimes, following the rape, simply involved a series of offenses so connected together as to constitute a continuous transaction. Evidence as to appellant's conduct after completing the rape went not only to proof of lack of consent on the part of the prosecutrix, but was essential to explain why she made no outcry until 4 A. M., several hours after the perpetration of the rape. We find no error in the admission of the evidence complained of.

Appellant contends that his clothing, the money and the automobile keys and driver's license of the prosecutrix should not have been admitted in evidence on the ground that taking and obtaining the same from the defendant, without a search warrant or an arrest warrant, constituted an illegal search and seizure in violation of his rights under both the State and Federal Constitutions. It does not appear from the record that any search warrant was issued, and no arrest warrant was issued until after the foregoing articles had been obtained from the appellant, all of which were introduced in evidence without objection.

Appellant's clothing, which he was removing, was obtained at the time of his arrest, at about 7:40 A. M. The sheriff testified that at the same time appellant gave him a five dollar bill. The automobile keys, drivers license and the remainder of the money were obtained from appellant at the detention room of the Greenwood County jail approximately one hour later. With respect to the articles obtained at the jail, the sheriff testified only to the effect that he had received or obtained the same from appellant. He did not elaborate upon how he received or obtained them, and was not cross examined thereabout.

The record fails to show that any of the articles obtained from the appellant were obtained as the result of a search. It is important to note that the provisions of the State and Federal Constitutions protect against, "unreasonable searches and seizures". A seizure of what is in plain view, without a search, or merely receiving articles in response to a request therefor, is not prohibited by either Constitution. *State v. Lee*, 246 S. C. 311, 143 S. E. (2d) 604; *State v. Morris*, 243 S. C. 225, 133 S. E. (2d) 744.

Contending that there was a search and seizure, appellant argues that his arrest without a warrant, was unlawful and that the alleged search and seizure were not incidental to a lawful arrest.

There was no contention in the course of the trial ██ ██ that the arrest was unlawful and, therefore, no occasion or reason for the sheriff in his testimony to outline in any detail the information which he had and acted upon in making the arrest of the appellant. The only reasonable inference from the record, however, is that the arrest was a completely lawful one. An arrest without a warrant by an officer of the law is entirely lawful when the officer has reason to believe a felony has been committed and that the person arrested is the party who committed it. Prosecutrix, who knew the identity of her assailant, promptly reported the matter to her neighbor, Mr. Neel, upon being released by appellant. Mr. Neel, in turn, reported the matter to the sheriff who went promptly to the area, and he testified that from the time he arrived in the area he was searching for the appellant and the appellant alone. The only reasonable inference from the evidence is that prosecutrix communicated to Mr. Neel not only the perpetration of the crime, but the identity of her assailant, and that Mr. Neel, in turn, communicated the same to the sheriff.

In addition to the record failing to disclose a search ██ of any kind, even if we assume that there was a search for, and seizure of any of the articles, the record contains nothing to reflect that such search and seizure were not purely incidental to a completely lawful arrest. If there were any facts which would have tended to prove an unlawful arrest or an unlawful search and seizure, it was incumbent upon the appellant to put such facts in the record by cross examination or otherwise. *State v. Lee,* 246 S. C. 311, 143 S. E. (2d) 604.

Finally, appellant asserts prejudicial error with respect to testimony by the sheriff concerning the man's jacket found in the automobile of prosecutrix. The said jacket was introduced in evidence, without objection, simply as a jacket found in prosecutrix' automobile, there being no evidence connecting the jacket with appellant. Thereafter, the solicitor questioned the sheriff as follows:

"Q. Sheriff, at any time after you got this jacket did you have an occasion to show it to the defendant, or did you ever show it to the defendant?

"A. Yes, sir, he—I didn't show it to him but he told me his jacket was left in the—"

At this point defense counsel objected on the ground that such was hearsay, self-incriminatory, and that there was no evidence that defendant was advised of his rights before making any statement. The presiding judge sustained the objection.

It is argued that even though the objection was ▇ sustained, the jury could have reached no other conclusion than that the defendant had told the sheriff that his jacket was left in the prosecuting witness' car. In the absence of having properly established that any statement made by the appellant as voluntary and, therefore, admissible, it was, of course, improper and, we might add, under the circumstances of this case totally unnecessary, for the solicitor to seek to elicit from the sheriff any statement which may have been made by the appellant with respect to the jacket found in the car of the prosecutrix. The presiding judge, of course, correctly sustained appellant's objection. The question before us is whether any prejudice resulted to appellant even though the objection was sustained.

In determining whether there was prejudice, we have to consider whether the evidence objected to and excluded could have even possibly or conceivably affected in any manner the verdict of the jury. Had the sheriff completed his answer and stated, "He told me his jacket was left in the car," such evidence would have tended to prove no element of the crime with which appellant was charged; it was simply additional, unnecessary proof of the identity of the person who assaulted prosecutrix. The identity of the appellant as the assailant of the prosecutrix was clearly, convincingly and overwhelmingly proved beyond any shadow of doubt by other evidence without any reference to the jacket

Prosecutrix had known appellant for approximately four years. She was in close contact with him on the night of the crime for more than three hours, and recognized him not only from his conversation in the dark, but was also able to see him on more than one occasion. Appellant was not at his home, early in the morning, when the sheriff first went looking for him, but was located at the home of his father-in-law some time later, and his clothes were wet, indicating that he had just come in out of the rain; blood was on appellant's shorts, and the car keys and drivers license of the prosecutrix, taken from her home at the time of the assault, were in possession of the appellant. Appellant was seen by two of his acquaintances, shortly before the assault, near the entrance to the private road leading to the home of prosecutrix. In response to a question as to where he was going, appellant stated, "he had a deal to pull."

In view of the clear and positive proof of the identity of the appellant as the assailant, it is inconceivable that there would have been any doubt in the minds of the jurors as to the identity of the assailant had there been no reference whatever to the jacket found in prosecutrix' car.

We are not unmindful that whether a defendant in a capital case is recommended to the mercy of the court is a matter within the sole discretion of the jury. For that reason we add that when all of the aggravated, brutal circumstances of the crime are considered, we deem it clear and certain that the ownership of the jacket found in the car of the prosecutrix could not have possibly had any bearing or influence whatsoever on the minds of the jurors in considering whether to recommend or not to recommend mercy.

Since, for the foregoing reasons, we deem that there is not even a remote conceivability or possibility of the verdict of the jury having been affected in any manner by the testimony of the sheriff with reference to the jacket, we conclude that no prejudice could have resulted to the appellant.

The exceptions of the appellant are without merit, and a search of the record fails to reveal any error which worked prejudice to any substantial right or rights of the appellant. The judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., Lewis and Brailsford, JJ., and Lionel K. Legge, Acting Associate Justice, concur.