### 19591

William JENKINS, Respondent, v. WATERFRONT EMPLOYERS—INTERNATIONAL LONGSHOREMEN ASSOCIATION PENSION WELFARE AND VACATION FUND, Appellants.

(195 S. E. (2d) 598)

*Charles H. Gibbs, Esq.,* of *Sinkler, Gibbs, Simons & Guerard,* Charleston, *for Appellant,*

*Vernon R. Scott, Esq.,* of Charleston, *for Respondent,*

March 20, 1973.

BUSSEY, Justice:

At issue in this action is the question of whether the plaintiff is entitled to disability pension benefits under a plan promulgated and implemented by the defendants as trustees, pursuant to collective bargaining agreements between stevedore employers and longshoremen's unions in the Charleston, South Carolina area. Upon trial, the case was submitted to the jury on the single issue of whether or not the plaintiff's disability entitled him to total disability benefits under the terms of the pension plan. The jury having found in the plaintiff's favor, the trial judge calculated the amount of the benefits due up to the date of the commencement of the action and gave the plaintiff judgment for that amount. The defendant trustees appeal from the denial of their motion for judgment *n. o. v.,* or, in the alternative, for a new trial.

The plaintiff was injured in an accident on January 6, 1967, and it is conceded that he is entitled to the benefits awarded if he is, in fact, totally and permanently disabled within the intent of the plan. Total and permanent disability is defined in the plan as follows:

"Disability shall be deemed to be total and permanent whenever the employee is wholly disabled by bodily injury or disease and will be permanently, continuously and wholly prevented thereby, for life, from engaging in any occupation and performing any work."

Apropos of the foregoing provisions, the trial judge charged the jury as follows:

"We then come to the interpretation of that particular clause from the pension plan, and I'm going to express it to you in this manner. If the plaintiff is physically or mentally unable to perform the material acts necessary to performance of any type of work in the usual and customary manner in which that type of work is done, and such type of work is the only type of work which the plaintiff is capable of doing and upon which he must depend for a living, then the plaintiff is totally disabled.

"If plaintiff is physically and mentally able to successfully engage in or participate in a type of work upon which he could depend for a living, then he is not disabled." * * *

"If you should find from the evidence that he is physically and mentally able, or mentally able to successfully engage in any type of work, and upon which he could depend for a living, then he is not disabled and your verdict is going to answer the question."

No exception was taken by the defendants-appellants to the foregoing charge of the trial judge as to the construction of the clause in the pension plan. Nor do we understand them to contend here that such was in any sense erroneous. Even if challenged, no error therein is readily perceived and, in any event, his charge is now the law of the case. Such being true, it would be superfluous for us to consider precisely what rules of construction should govern in a matter of this kind, or, perchance, what other construction of the particular language one might reasonably arrive at.

The appellants' basic contention is simply that the evidence established that the plaintiff was not, in fact, totally and permanently disabled within the purview of the plan, and not entitled to disability benefits, and that, accordingly, their motion for judgment *n. o. v.* should have been granted.

On this issue, it is elementary that the evidence and all inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff. We review and state the evidence and inferences therefrom in the light of the foregoing principle.

The plaintiff was at the time of trial a 48 year old negro with a work background limited to heavy, manual labor; he was an illiterate, having gone only as far as the second grade and was barely able to write his name. He had been a stevedore for approximately 20 years at the time of sustaining a serious injury to his back in 1967. He was examined and/or attended by numerous doctors following his injury, four of whom testified upon the trial. Two of these were neuro surgeons and two were orthopedic surgeons. While there were some differences, all of these doctors were in substantial accord as to the plaintiff's condition. They all rated his disability in terms of percentages of disability to the body as a whole, such percentages ranging from 25% to 45%.

They all seemed to concur that plaintiff was permanently and totally disabled from doing any heavy labor which would involve bending, lifting, pushing, etc. Two of the doctors were of the opinion that standing for any length of time would aggravate his condition. All were agreed that the disability was permanent, and one or more of them of the view that it would get worse with time. One neuro surgeon when questioned as to the extent of manual labor which plaintiff could undertake, stated, "I think it would take very little to throw this man into a severe episode to where he would not be able to get around and handle even his normal daily activities."

It is true that all of the doctors seemed to be of the view that there must be some sitting, sedentary, light work that plaintiff could do in his disabled condition but the record contains no suggestion from the doctors or anyone as to just where a 48 year old, illiterate stevedore was going to

find a job of that description that would furnish him anything like a livelihood.

The record does disclose that the work performed by certain members of a stevedoring gang is not so strenuous as that performed by others. It is apparently conceded that plaintiff is totally disabled to do the heavy work of a hold man, but argued that he would be able to work as a hatch tender, winch man, hook man, or perhaps as a fork lift driver. Conceding that there is some evidence from which it might be inferred that he would be able to work at one of such positions, if given preferred treatment, we regard the evidence as being quite as susceptible of the inference that he was disabled to work at any position on a stevedoring gang and, hence, the issue was for the jury.

In conclusion we are satisfied that there was abundant evidence to go to the jury on the issue of plaintiff's permanent and total disability within the purview of the pension plan as construed by the trial judge in his unexcepted to charge.

The only other contention of appellants is that the trial court erred in refusing to permit cross examination of the plaintiff regarding his claim against the ship on which he had been injured and to elicit from him some details of his recovery therein. Suffice it to say, on this question, that appellants are unable to point out wherein the elicited information was relevant to any issue involved in the case, or wherein they were in the slightest degree prejudiced by the ruling of the trial judge in refusing to permit this line of cross examination. It is, of course, well settled that the admission or rejection of proffered testimony is largely within the sound discretion of the trial judge and that his exercise of such discretion will not be disturbed on appeal unless it can be shown that there was an abuse of discretion amounting to an error of law and that an appellant has been prejudiced thereby. *State v. Greg-*

*ory,* 198 S. C. 98, 16 S. E. (2d) 532; West's South Carolina Digest, Trial, Key No. 43.

We deem appellants' exceptions to be without merit and the judgment below is, accordingly,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.