23748

The STATE, Respondent v. Rebecca M. SMITH, Appellant.

(424 S.E. (2d) 496)

Supreme Court

*Chief Atty. David I. Bruck* of *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka,* and *Asst. Atty. Gen. Harold M. Coombs, Jr.,* Columbia, and *Sol. Ralph J. Wilson,* Conway, *for respondent.*

Heart March 9, 1992; Decided Nov. 30, 1992.

Reh. Den. Dec. 17, 1992.

CHANDLER, Justice:

Appellant Rebecca Smith (Rebecca) was convicted of murdering her husband during the commission of an armed robbery and sentenced to death. We reverse the conviction and remand for a new trial.

## FACTS

On Friday, July 14, 1989, Harold Smith (Harold), the victim, left his home in Laurinburg, North Carolina, for Myrtle Beach. There, he stayed in a mobile home belonging to Rebecca's mother. On the following Monday, Rebecca attempted, unsuccessfully, to call Harold several times; when she could not reach him by Tuesday, she contacted the North Myrtle Beach police department.

In response to her call, Officer Asa Bailey went to the mobile home on Tuesday afternoon. He noticed the front door appeared to be pried open and, when he investigated further, discovered Harold's dead body in the front bedroom.

The pathologist testified that Harold died from blunt trauma to the head with associated massive injury to the underlying brain, an injury consistent with being struck on the forehead with a blunt instrument, such as a baseball bat. He estimated the time of death to be 2:00 a.m., Monday, July 17, 1989.

The State's case was, primarily, based upon the testimony of Hank Locklear, Rebecca's nephew. His testimony at trial, is summarized:

On Sunday night, July 16, 1989, Hank was at Rebecca and Harold's home in Laurinburg, North Carolina. Billy McGee (Billy), an alleged paramour of Rebecca's, came over and, along with Rebecca and her son, Brian, used cocaine. About thirty minutes later, Hank, Billy, Rebecca, and Brian drove to Myrtle Beach, arriving at approximately 2:30 a.m. They went first to the pier, then to the trailer where Harold was staying. While Hank and Billy remained in the car, Brian and Rebecca knocked on the trailer door and Harold let them in. Rebecca was carrying a baseball bat.

About one hour later, Rebecca came running out, telling Billy and Hank to come into the trailer, that she had killed Harold. Hank saw Harold lying on the bed in a pool of blood, calling out for Rebecca. After Rebecca struck Harold with the baseball bat, Brian took the bat and hit him again to "make sure that he was dead." Billy then took the bat, hitting the trailer door to give the appearance of a break-in. Hank, frightened, returned to the car.

On the return trip to Laurinburg, Rebecca put on Harold's diamond horseshoe ring and rifled his wallet. Billy was wearing Harold's watch.

Billy's testimony at trial was, essentially, the same as Hank's; however, he testified additionally that, after the murder, Brian removed Harold's ring and wallet and gave them to Rebecca. At Rebecca's direction, Billy picked up the watch. He stated that, as they returned to Laurinburg, the money was removed from the wallet which, along with the baseball bat, was thrown over a bridge. Later, Rebecca gave the watch and ring to her "root worker."

Brian's testimony for the defense gave an entirely different version of the events from that of Hank and Billy. According to Brian, on the night in question, his mother, ill with vertigo, never left Laurinburg; only he, Hank, and Billy went to the Beach for the purpose of obtaining salt water which Hank needed for his witchcraft. When they arrived at the trailer, Brian and Hank went to visit with Harold, while Billy stayed in the car "shooting up" cocaine. After Harold was asleep, Billy went into the trailer with the baseball bat and killed Harold.

Rebecca testified in her defense at trial. She corroborated Brian's testimony, claiming she was never at Myrtle Beach, but was in Laurinburg ill with vertigo. She admitted having given earlier statements which placed her at Myrtle Beach, but testified they were given only to protect Brian.

The jury convicted Rebecca of murder in the commission of armed robbery and imposed the death sentence.

Billy, Hank, and Brian all pled guilty to various charges and were sentenced as follows: (1) Hank, pleading guilty to grand larceny and accessory after the fact, was sentenced to concurrent ten-year terms; (2) Billy, pleading guilty to criminal conspiracy, obstruction of justice, accessory after the fact of murder and grand larceny, was sentenced to 35 years; (3) Brian, pleading guilty to conspiracy, obstruction of justice, and two counts of accessory after the fact of murder, was sentenced to 35 years.

## ISSUES

1. Was evidence of alleged cocaine use by Rebecca at previous times in the past erroneously admitted at trial?

2. Was it error to exclude Hank Locklear's prior statement?

## DISCUSSION

1. *Evidence of Prior Cocaine Use*

At trial, the following testimony of Billy was admitted concerning Rebecca's use of cocaine:[1]

(1) Testimony of Billy that, at an unspecified time prior to the murder, he and Rebecca smoked cocaine obtained by trading pistols belonging to Harold;

(2) Testimony of Billy that, upon arriving at Myrtle Beach, Rebecca requested that he wait at the pier while she went to see Harold; however, he refused because she had "dropped me [Billy] off before and left me beside the road two and three hours at a time while she was going to get cocaine."

We hold that this testimony was irrelevant to establish the crime at issue and was so unduly prejudicial as to constitute reversible error.

It is well settled that evidence of other crimes is incompetent to establish the crime at issue unless it tends to show: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan; or (5) the identity of the perpetrator. *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923).

Moreover, in *State v. Coleman,* 301 S.C. 57, 389 S.E. (2d) 659 (1990), we held that, where the only function of evidence concerning the defendant's use of illegal drugs "was to demonstrate [defendant's] bad character and social irresponsibility," the admission of such evidence was legal error. 301 S.C. at 60, 389 S.E. (2d) at 660. *See also State v. Bolden,* 303 S.C. 41, 398 S.E. (2d) 494 (1990). Further, evidence of drug use is incompetent to establish motive for a crime or the state of mind of the defendant where the record does not support any relationship between the crime and the drug use. *Id.*

We reject the State's contention that Billy's testimony was relevant to establish motive. Nothing in the record indicates a connection between the murder and Rebecca's use of cocaine. Rather, Billy's testimony about Rebecca's drug use at unspecified times prior to the murder served only to discredit her character and portray her as a miscreant reprobate. This does not fall within the exceptions of *Lyle, supra,* and is impermissible under our holding in *Coleman, supra.*

The dissenting opinion, which upholds Billy's testimony under the *res gestae* exception, has misconstrued our prior case law. The South Carolina cases cited by the dissent allow evidence of another crime only when the other crime "had a direct bearing on and related to the commission of the [later crime]." *State v. Johnson,* — S.C. —, 410 S.E. (2d) 547, 552 (1991), *cert. denied* — U.S. —, 112 S.Ct. 1691, 118 L.Ed. (2d) 404 (1992). It is noteworthy that in *all* these cases the other crime also established motive, identity, and/or the state of mind of the defendant, thereby attesting to its relevancy.

Billy's explanation as to *why* he and Rebecca argued on the night of the crime was not, as contended by the dissent, "part and parcel" of the subsequent murder of Harold. *See State v. Brooks, infra.* (Where defendant assaulted two women, one assault "was so inextricably interwoven . . . it was, in effect, all one transaction.") Rather, the two

events are totally unconnected. Moreover, the prior incident of Rebecca smoking cocaine at an unspecified time was certainly not contemporaneous with Harold's murder. As in *State v. Bolden, supra,* the defendant's prior drug use, unrelated to the crime at issue, should have been excluded.

■ Finally, the prejudice of this testimony was heightened when the State employed it to impeach Rebecca's character witnesses and, in closing argument, referenced her drug use. The testimony in this case produced diametrically opposite versions of what occurred, so that witness credibility was crucial to the jury's determination of who and what to believe. The "prior cocaine use" testimony was so destructive to Rebecca's character, hence her credibility, that it cannot be held harmless error or cumulative. *State v. Outlaw,* — S.C. —, 414 S.E. (2d) 147 (1992).

### 2. Hank's Prior Statement of August 8, 1989

■ On August 8, 1989, Hank made a voluntary oral statement of Officer Floyd, identifying Billy as the killer. In a subsequent statement of March, 1990, Hank changed his story, stating that Rebecca and Brian murdered Harold. In his testimony at trial, he reaffirmed that Rebecca and Harold had committed the crime.

Defense counsel sought to introduce a transcription of the earlier August 8 statement. The trial judge held it inadmissible on the ground that Hank was unable to identify it due to his inability to read. Although defense counsel was permitted to cross-examine Hank about the prior inconsistent statement, he was not permitted to introduce it into evidence.

Later, in an effort to have the statement admitted, defense counsel questioned Detective Floyd concerning its contents. The Solicitor's objection on the ground of hearsay was sustained.

Rebecca argues it was error to exclude Hank's August 8 statement as hearsay, contending that the statement *itself* was essential to reveal all of the inconsistencies in Hank's later statement and his testimony at trial. We agree.

■ It is well settled that evidence is not hearsay unless offered to prove the truth of the matter asserted. *State v. Sims,* 304 S.C. 409, 405 S.E. (2d) 377 (1991), *cert. denied Sims v. South Carolina,* — U.S. —, 112 S.Ct. 1193, 117 L.Ed.

(2d) 434 (1992). Moreover, prior inconsistent statements are admissible as substantive evidence "when the declarant testifies at trial and is subject to cross examination." *State v. Copeland,* 278 S.C. 572, 581, 300 S.E. (2d) 63, 69 (1982), *cert denied.* 460 U.S. 1103, 103 S.Ct. 1802, 76 L.Ed. (2d) 367 (1983).

Since the purpose of questioning Officer Floyd about the contents of Hank's prior statement was impeachment, not to prove its truth, it should have been admitted.

■ Further, we agree with Smith that the exclusion of the prior statement cannot be considered harmless error.

It is clear from the August 8 statement that Hank's implication of Rebecca in the murder was, arguably, induced by the police officer's leading questions.[1] Additionally, many inconsistencies could not be fully developed by cross-examination, absent the statement itself.

Here, the credibility of witnesses was crucial to both prosecution and defense; the jury should have been permitted to examine the prior inconsistent statement in its entire text. Exclusion of the statement was reversible error.

The remaining issues from the guilt phase of the trial are affirmed pursuant to Rule 220(b)(1), S.C.A.C.R. Since we reverse Smith's conviction, we do not address the sentencing phase issues.

Reversed and remanded.

HARWELL, C.J., and FINNEY and MOORE, JJ., concur.

TOAL, J., dissents in separate opinion.

TOAL, Justice, dissenting:

I respectfully dissent. I would hold that the evidence of prior cocaine use was admissible as part of the *res gestae*. I would also hold that exclusion of Hank's prior statement was

---

[1] The following excerpt graphically illustrates the role that leading questions played in Hank's statement:

HANK: From what I seen it was—
FLOYD: From what you saw, you saw it was a prearranged signal that I will cut the lights off, this is Rebecca, she goes in, she cuts the lights off and then that is some kind of signal for Billy Ray to go in—is that what you're telling us?
HANK: Yes sir.

error; however, the error was harmless. Thus, I would affirm defendant's conviction and sentence.

The *res gestae* theory recognizes that evidence of other offenses may be an integral part of the crime with which the defendant is charged, or may be needed to aid the fact finder in understanding the context in which the crime occurred. *People v. Czemerynski*, 786 P. (2d) 1100, 1109 (Colo. 1990). The rationale underlying this theory is that evidence of other criminal conduct that occurs "contemporaneously with or is part and parcel of the crime charged is considered part of the *res gestae* of that offense, and consequently is not subject . . . to the general rule that excludes evidence of *prior* criminality." *Czemerynski*, 786 P. (2d) at 1109 (citing *Callis v. People*, 692 P. (2d) 1045, 1051 n. 9 (Colo. 1984).

The *res gestae* theory and the reasoning underlying the theory were discussed in detail by the Fourth Circuit:

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae' " or the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . .' [and is thus] part of the res gestae of the crime charged." And where evidence is admissible to provide this "full presentation" of the offense, "[t]here is no reason to fragmentize the event under inquiry" by suppressing parts of the "res gestae." As the Court said in *United States v. Roberts*, (6th Cir. 1977) 548 F. (2d) 665, 667, *cert. denied*, 431 U.S. 920, 97 S.Ct. 2188, 53 L.Ed. (2d) 232 "[t]he jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void—without knowledge of the time, place and circumstances of the acts which form the basis of the charge."

*United States v. Masters*, 622 F. (2d) 83, 86 (4th Cir. 1980) (in-

ternal citations omitted). *See also, People v. Czemerynski, supra; Strickland v. State,* 784 S.W. (2d) 549 (Tex. App. 1990) (evidence of other crimes is admissible "pursuant to *res gestae* theory under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they realistically evaluate the evidence").

This Court has recognized that evidence of other crimes may be admissible if it forms part of the *res gestae. See State v. Johnson,* — S.C. —, 410 S.E. (2d) 547 (1991), *cert. denied,* — U.S. —, 112 S.Ct. 1691, 118 L.Ed. (2d) 404 (1992) (prior murder had a "direct bearing on and related to the commission of the murder of the trooper such that it formed part of the *res gestae*"); *State v. Brooks,* 235 S.C. 344, 111 S.E. (2d) 686 (1959), *appeal dismissed,* 365 U.S. 300, 81 S.Ct. 707, 5 L.Ed. (2d) 689 (1961) (overruled by *State v. Torrence,* 305 S.C. 45, 406 S.E. (2d) 315 (1991), only to the extent that it requires in *favorem vitae* review) (evidence that defendant ravished or attempted to ravish another female on the occasion of the alleged rape of the prosecutrix was admissible as part of the *res gestae*); *State v. Blanden,* 177 S.C. 1, 180 S.E. 681 (1935) (evidence that just prior to murder defendant had robbed another person was admissible as part of the *res gestae*); *see also State v. Miller,* 260 S.C. 1, 193 S.E. (2d) 802 (1973); *State v. Thomas,* 248 S.C. 573, 151 S.E. (2d) 855 (1966) (overruled by *State v. Torrence,* 305 S.C. 45, 406 S.E. (2d) 315 (1991), only to the extent that it requires *in favorem vitae* review); *State v. Miller,* 73 S.C. 277, 53 S.E. 426 (1906). I note that these cases demonstrate that there is apparently some confusion as to how the *res gestae* theory interrelates with the exceptions enunciated in *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923). Specifically, some of the South Carolina cases appear to confuse the *res gestae* theory with the fourth *Lyle* exception. The majority opinion perpetuates this confusion.

Under the fourth *Lyle* exception, evidence of other crimes or bad acts is admissible if the evidence tends to establish a common scheme or plan involving the commission of two or more crimes which are "so related to each other that proof of one tends to establish the others." For example, *see State v. Bell,* 302 S.C. 18, 393 S.E. (2d) 365 (1990), *cert. denied,* — U.S. —, 111 S.Ct. 277, 112 L.Ed. (2d) 182 (1990) (in murder prose-

cution, evidence of prior murder admissible as evidence of plan or scheme due to similarities between the murders); *State v. Hallman,* 293 S.C. 172, 379 S.E. (2d) 115 (1989) (in prosecution of defendant for sexual abuse of foster child, evidence of alleged sexual abuse of other foster children admissible to show common scheme or plan); *State v. Nix,* 288 S.C. 492, 343 S.E. (2d) 627 (Ct. App. 1986) (evidence of defendants' theft of car was so related to subsequent armed robbery, kidnapping, and rape for which car was employed as to be admissible against defendants as relevant to a common scheme or plan between crimes). The *res gestae* theory is a separate and independent method by which evidence of other criminal acts can be admitted into evidence. Under the *res gestae* theory, events leading up to the crime or occurring after the crime are admissible to complete the story of the crime. Thus, under the *Lyle* exception, the crimes need not be part of the same criminal episode; rather, the crimes may occur over a period of time if they are so related by common scheme or plan. Under *res gestae,* the other crimes or bad acts must be a part of the immediate context of the crime on trial, but need not establish a common scheme or plan involving the commission of two or more crimes which are so related to each other that proof of one tends to establish the others. Although some of the above-cited cases refer to the *Lyle* exceptions, when read closely, they articulate the distinction between the *Lyle* grounds for the admission of evidence and *res gestae. See e.g. Brooks, supra.* "[P]roof of the crime which defendant is charged here must necessarily involve a reference to other offenses by him." Quoting *People v. Murphy,* 53 Cal. App. 474, 200 P. 484 (1921); *Thomas, supra* (evidence of beating subsequent to rape was essential to explain why prosecutrix made no outcry until several hours after the rape). I recognize that there is some overlap in these two areas and that there may well be cases in which evidence of other crimes is admissible under either the fourth *Lyle* exception or the *res gestae* theory. For example, *State v. Nix, supra,* is probably such a case. The evidence may also be admissible to show motive, intent or state of mind. Nevertheless, *res gestae* alone will support the admission of evidence provided it is relevant and its probative value is not substantially outweighed by the danger of undue prejudice.

Turning to the facts of this case, I believe that Billy McGee's testimony regarding Rebecca's prior use of cocaine was admissible as part of the *res gestae*. Billy's testimony concerning the sale of Harold's guns for money to purchase cocaine was part of the "full context of the crime." *United States v. Masters, supra.* The testimony went to show the lifestyle which created the bizarre scenario leading to the murder.

Rebecca was tried for the murder of her husband. The evidence reveals that Rebecca and Harold were married in 1974. Harold was a good provider who turned over his weekly paycheck to Rebecca and received a $40-per-week allowance. Rebecca's three children of a prior marriage—Brian, Greg and Mitchell—also lived in the household. Rebecca had a long-term adulterous relationship with one Calvin Farris both before and during her several marriages. Rebecca and Calvin broke up in 1989 after Rebecca offered Calvin $5,000 to murder Harold. Shortly thereafter, Rebecca befriended Billy McGee who was then serving time in state prison. Billy, who had spend most of his adult life in jail, got out of prison in May of 1989. Rebecca's husband, Harold, frequently went on fishing trips to Rebecca's mother's trailer at Cherry Grove Beach. Between May of 1989, when Billy got out of prison, and July 16, 1989, when Harold was killed, the following lifestyle developed. Whenever Harold left town, Billy would be in Harold's bed with Rebecca. Billy threatened Rebecca he would tell Harold about their relationship unless she gave him money. Rebecca gave Billy some of Harold's old coins and pistols to sell. Billy and Rebecca used cocaine together. Rebecca was the beneficiary of Harold's insurance. Rebecca told an investigating officer that on the night of his death, Harold had on his person $1,000 and a yellow gold horseshoe-shaped ring. The State's theory of the case was that it was a robbery-murder and that cocaine use was a part of the motive for the crimes. The State contended that after an evening of cocaine use at Rebecca and Harold's home, Rebecca, Billy, Rebecca's nephew, Hank Locklear, and Rebecca's son, Brian, drove to Cherry Grove to murder Harold. According to the State's theory, Rebecca and Brian killed Harold with a baseball bat. Billy and Brian assisted Rebecca in robbing Harold's dead body of money and a ring. I disagree with the majority's view that the

prior cocaine use was irrelevant or improperly admitted. On the contrary, it is highly relevant to support the State's theory of motive and to explain the "context" and "environment" of the crime. I believe the majority commits error under our existing case law. I further believe that the Fourth Circuit's analysis in *United States v. Masters, supra,* provides a clear and rational frame in which to analyze the admissibility of this type evidence under the doctrine of *res gestae.*

I further believe that Billy McGee's testimony explaining why he and Rebecca argued at the pier on the night of the crime was admissible as part of the *res gestae.* Hank testified prior to Billy. Hank testified that they drove from North Carolina to a pier at Myrtle Beach where Rebecca ordered both Hank and Billy out of the car. Billy, however, refused to get out of the car and Billy and Rebecca argued. When Billy testified, he confirmed this portion of Hank's testimony. Billy then offered the reason he refused to get out of the car and an explanation of why he and Rebecca argued. Billy testified that he refused to get out of car because, in the past, Rebecca left him beside the road for several hours while she purchased cocaine. The two argued because he refused to get out of the car. A key piece of physical evidence recovered from the murder scene was a sample from the commode in the trailer found to contain cocaine. There was testimony that Rebecca used this commode the night of the murder. In my opinion, "[t]he jury [was] entitled to know the 'setting' of the case. It cannot be expected to make its decision in a void—without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *United States v. Roberts,* 548 F. (2d) 665, 667 (6th Cir.), *cert. denied,* 431 U.S. 920, 97 S.Ct. 2188, 53 L.Ed. (2d) 232 (1977). The explanation of events on the evening of the crime was admissible to provide the jury with a "full presentation of the case," and thus, part of the *res gestae.*

As to the exclusion of Hank's prior statement, under our case law, the trial judge erred in ruling the prior statement inadmissible. *State v. Dingle,* 279 S.C. 278, 306 S.E. (2d) 223 (1983). The inquiry, however, does not end there. Heretofore, we have not had a *per se* rule requiring a new trial when the judge erroneously admits or fails to admit evidence. Our cases

have held that the party claiming such error must show that (1) the trial judge abused his discretion, (2) that the abuse of discretion was an error at law, and (3) that the party claiming error was prejudiced by the error. *Jenkins v. Waterfront Employer-Int'l Longshoremen Ass'n Pension Welfare & Vacation Fund*, 260 S.C. 277, 195 S.E. (2d) 598 (1973); *State v. Gregory*, 198 S.C. 98, 16 S.E. (2d) 532 (1941); *State v. Nathari*, 303 S.C. 188, 399 S.E. (2d) 597 (Ct. App. 1990), *Welch v. Whitaker*, 282 S.C. 251, 317 S.E. (2d) 758 (Ct. App. 1984).

The record clearly shows that Hank was impeached with his prior statement. Appellant admits in her brief that "on cross-examination, [Hank] acknowledged having attributed the murder to McGee in his initial tape-recorded statement." Brief of Appellant at 14. Thus, the substance of Hank's prior statements was before the jury. The excluded testimony, therefore, was merely cumulative since it was only the tape itself and not its content that was excluded. *State v. Lee*, 203 S.C. 536, 28 S.E. (2d) 402 (1943).[1] The majority finding of reversible error on this issue effectively establishes a *per se* rule requiring reversal in every case where a trial court erroneously admits or fails to admit evidence. The majority makes the conclusory statement that Rebecca was prejudiced but does not explain how. Without a showing of actual prejudice, the error should be analyzed as harmless. To fail to require a showing of actual prejudice would mandate reversals in every case where any erroneous evidentiary ruling is made by the trial judge. No litigant is entitled to a perfect trial. I would hold that Rebecca failed to show that she was prejudiced by the failure to admit Hank's prior statement and affirm this issue.

---

[1] *State v. Lee*, 203 S.C. 536, 28 S.E. (2d) 402 (1943) is a leading South Carolina case. *Lee, supra* has been cited by Alabama, California, Georgia, Maryland, Massachusetts, Missouri, Nebraska, New Jersey, North Carolina, Oklahoma, Washington, Wyoming, and three A.L.R. annotations.